Filed 3/3/26  P. v. Lopez CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>PAUL ANTHONY LOPEZ, JR.,<br><br>Defendant and Appellant. | F089213<br><br>(Super. Ct. No. 1217957)<br><br>**OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Stanislaus County.  Dawna Reeves, Judge.

Steven A. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Amanda D. Cary and Lewis A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Appellant Paul Anthony Lopez, Jr., challenges the denial of his petition for resentencing under Penal Code section 1172.6.[1] We conclude the record of conviction shows he is ineligible for resentencing as a matter of law, and we affirm the trial court's order.

## BACKGROUND

*Underlying Criminal Proceedings*

The District Attorney of Stanislaus County filed an information on January 22, 2007, charging appellant and codefendants with premeditated attempted murder (§§ 664, 187; count I); assault with a deadly weapon (§ 245, subd. (a)(1); count II); possession of a shank while in custody (§ 4502, subd. (a); count III); and active participation in a criminal street gang (§ 186.22, subd. (a); count IV). The information also alleged the following enhancements: the offenses were committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)) as to counts I, II, and III; great bodily injury was personally inflicted (§ 12022.7, subd. (a)) as to counts I, II, and IV; and a deadly weapon was personally used (§ 12022, subd. (b)) as to counts I and IV.

A jury convicted appellant of counts I, III, and IV, found true the gang enhancement as to counts I and III, found true the great bodily injury enhancement as to count I, and acquitted appellant of count II on May 17, 2007.

The court sentenced appellant to 20 years to life in prison as follows: 15 years to life on count I, plus a consecutive three-year term for the great bodily injury enhancement; one year on count III, plus one year for the gang enhancement; and the sentence on count IV was stayed (§ 654). Appellant's sentence was imposed consecutively to his sentence in another case.

Appellant appealed to this court, and we affirmed the judgment. (*People v. Lopez* (Jun. 24, 2009, F054541) [nonpub. opn.].)

---

[1] Undesignated statutory references are to the Penal Code.

2.

*Present Petition for Resentencing*

Appellant filed a petition for resentencing under former section 1170.95 (now § 1172.6)[2] on September 29, 2023. The court appointed counsel for appellant and ordered the district attorney to respond to the petition on October 6, 2023. The district attorney filed a brief contending appellant's petition should be denied on November 17, 2023. The court denied appellant's petition at the prima facie stage on November 18, 2024, and appellant challenges that ruling on appeal.

## FACTS[3]

Appellant and codefendants Armando Lopez[4] and Albert Lucero were inmates at Stanislaus County Jail, and all were validated members of the Norteño gang. The victim (Kenneth Lindsay), an acquitted codefendant (Timothy McKenzie), and the three codefendants were housed together with other documented members of the Norteño gang in a 12–man cell. On October 19, 2006, the inmates were removed from their cell for cell maintenance. Four of the inmates, including Lindsay, temporarily were placed together in a holding cell. While in the cell, Lindsay found three balloons of heroin. Lindsay gave one balloon to a cellmate and secreted two of the balloons on his person. Later, Lindsay informed Armando and appellant about the heroin. Heroin is a valuable commodity in jail. Generally, gang members are required to share with other gang members any drugs that are found, not for consumption, but for use in gaining power and control within the jail. Lindsay kept his two balloons instead of passing them on to gang leaders. He began to barter the heroin for commodity items, which violates the gang's

---

[2] Former section 1170.95 was renumbered section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10.)

[3] The facts are taken from our prior nonpublished opinion, *People v. Lopez*, *supra*, F054541.

[4] We refer to Armando Lopez by his first name for clarity and convenience, because he shares a last name with appellant. No disrespect is intended.

code of conduct. Inmates who engage in this behavior face punishment and "removal" by other gang members. Fatal removals involve the use of weapons.

Later that evening, after Lindsay took his shower, he was invited to join in a game of cards. Seated at the table were the three codefendants and McKenzie. While sitting at the table, Lindsay was hit from behind in the chest. He turned and saw Armando. Appellant came to Lindsay's side. At first, Lindsay believed appellant was coming to his aid, but instead appellant punched Lindsay in the face and was grinning. Lindsay was hit from the other side but was not sure who hit him. He tried to grab hold of McKenzie but was unable to stay up. Lindsay fell to the floor. His assailants then kicked and hit him numerous times. Lindsay yelled "man down" in an attempt to summon deputies. Appellant told him to "shut up" and "close [his] eyes," a reference Lindsay understood as meaning to die. Lucero kicked him from behind. Lindsay could not say how many times he was kicked or hit or who inflicted what blows. He did not see McKenzie hit or kick him. Lindsay did not see any weapons. After Armando hit him in the chest, Lindsay pushed Armando off him and Armando scooted to the right and was gone.

Lindsay lost consciousness. As a result of the attack, Lindsay suffered wounds to the back of his head requiring stitches; a number of scratches, including one across his neck; a slice and scrape across his nipple; and a small puncture-like wound on his chest that did not require stitches. There was no mention of the puncture wound or stabbing in the medical reports.

When the deputies arrived at the cell, Lindsay was down and nonresponsive. There was blood on the floor and blood scattered about the cell. None of the inmates in the cell claimed to have seen what happened. The deputies segregated the inmates who had visible signs of trauma. Appellant, Armando, and one other inmate were found to have redness, swelling, or cuts on their hands. Armando was wearing a T-shirt that had a sleeve torn off, and blood was found on his boxer shorts. Appellant's boxers also had

4.

blood on them.  There were no marks found on Lucero's hands.  After the assault, the heroin was gone.

The next morning, Deputy Teso, a gang specialist officer, came to investigate the attack.  When interviewing an inmate, Teso asked him to lift his trouser legs.  When the inmate complied, Teso found a "huila" or written memo.  The huila was addressed to "Manos" and signed by "Soldier."  It detailed the assault on Lindsay, named those who participated in the attack, and provided the motive for the attack—Lindsay's failure to follow the gang's code of conduct.

Detective Navarro interviewed Lindsay the day after the assault.  Lindsay did not identify any of his attackers.  Later, Lindsay said he did not do so out of fear.  In March 2007, Lindsay ran into Armando during a court date.  Armando asked Lindsay if he was going to testify and told Lindsay he was lucky to be alive.  Lindsay took this as a threat.  After this encounter, Lindsay negotiated a deal with the prosecution and identified his attackers.

## DISCUSSION

### *The Court Correctly Denied Appellant's Petition for Resentencing*

Appellant claims the court erred in denying his petition for resentencing.

*Additional Background*

At appellant's trial, the court instructed the jury:

"To prove that [appellant] is guilty of a crime based on aiding and abetting that crime, the People must prove that:

"1.  The perpetrator committed the crime;

"2.  [Appellant] knew that the perpetrator intended to commit the crime;

"3.  Before or during the commission of the crime, [appellant] intended to aid and abet the perpetrator in committing the crime;

"AND

"4.  [Appellant's] words or conduct did in fact aid and abet the perpetrator's

5.

commission of the crime.

"Someone *aids and abets* a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime."

Later, the court also instructed the jury:

"The defendants are charged in Count I with attempted murder.

"To prove that the defendants are guilty of attempted murder, the People must prove that:

"1.  The defendants took direct but ineffective steps toward killing another person;

"AND

"2.  The defendants intended to kill that person."

*Court's Ruling*

The court denied appellant's petition for resentencing, finding him ineligible as a matter of law.  The court stated it reviewed the record of conviction, including the information, jury instructions, verdicts, abstracts of judgment, and this court's nonpublished opinion.  The court also considered briefs and arguments submitted by counsel.

In denying the petition, the court observed that appellant's jury was not instructed on the natural and probable consequences doctrine.  The court also noted that the jury found appellant personally inflicted great bodily injury on the victim in the course of the attempted murder, "thereby identifying him as a direct perpetrator."

*Law*

In certain circumstances, "[a] person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter may file a

6.

petition with the court … to have the … conviction vacated and to be resentenced on any remaining counts." (§ 1172.6, subd. (a).)

One requirement for resentencing is that the petitioner show he or she "could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a)(3).) The effect of those statutory changes is to permit resentencing "if the defendant neither killed nor intended to kill and was not 'a major participant in the underlying felony [who] acted with reckless indifference to human life, as described in subdivision (d) of [Penal Code] Section 190.2.' (Pen. Code, § 189, subd. (e)(3); see *id.*, § 1172.6; Stats. 2018, ch. 1015, §§ 3–4; Stats. 2022, ch. 58, § 10.)" (*People v. Strong* (2022) 13 Cal.5th 698, 703.)

*Standard of Review*

"We review de novo an order denying a section 1172.6 petition at the prima facie review stage. [Citations.] Although at that stage a court presented with a section 1172.6 petition may not engage in factfinding that requires weighing evidence or exercising discretion, the court may consider jury instructions, jury verdicts, and other documents that are part of the record of conviction to determine whether the petitioner satisfies the conditions for relief." (*People v. Flores* (2023) 96 Cal.App.5th 1164, 1170.)

*Analysis*

Appellant argues the court erred because the jury instructions left open the possibility that a *coparticipant* committed the attempted murder and appellant got "tagged with that person's mental state." Not so. The trial court expressly instructed the jury that in order to convict "the defendants" of attempted murder, it *must* find that "the defendants" *intended* to kill.[5]

---

[5] The court also instructed the jury that it must "separately consider the evidence as it applies to each defendant" and to "decide each charge for each defendant separately." The court also told the jury, "Unless I tell you otherwise, all instructions apply to each defendant."

The fact that the trial court gave an aiding and abetting instruction does not help appellant. That instruction expressly required that, in order to impose liability as an aider and abettor, appellant must have "specifically intend[ed] to" aid, facilitate, promote, encourage, or instigate the perpetrator's commission of the crime. This meant that if the jury wanted to convict appellant as an aider and abettor of attempted murder, it must have necessarily found that he specifically intended to aid the attempted murder. In other words, that appellant intended to kill the victim. (See, e.g., *People v. McCoy* (2001) 25 Cal.4th 1111, 1118.)

*People v. Langi* (2022) 73 Cal.App.5th 972, on which appellant relies heavily, is inapposite. That case did involve an aider and abettor instruction. But it was that instruction's *interplay* with second degree murder instructions that caused problems. The court observed that "the standard aiding-and-abetting instructions are ill suited to the crime of second degree murder." (*Id.* at p. 982.) The reason is that the aiding and abetting instruction only required that the aider and abettor have shared the unlawful purpose of the perpetrator. (*Ibid.*) And the second degree murder instructions only required " 'knowledge of the danger to, and with conscious disregard for, human life.' " (*Ibid.*) As long as that requirement was met, the perpetrator's ultimate purpose could have merely been to strike, injure or embarrass the victim—it need not have been to kill the victim. (*Id.* at pp. 982–983.) And if the defendant shared only one of those "lesser" purposes with the perpetrator, then he could have been found an aider and abettor *without* possessing intent to kill. (*Ibid.*)

The same cannot be said of the crime of attempted murder. And this is an attempted murder case, not a second degree murder case. The jury in appellant's case was properly instructed that, in order to commit the crime of attempted murder, the perpetrator must have *intended* to *kill* the victim. Merely knowing the act was dangerous and disregarding that danger would not have been enough, as it is with second degree murder.

8.

Because the record of conviction—especially the jury instructions—show that defendant was convicted of attempted murder upon a finding he *personally* intended to kill the victim, he is ineligible for relief as a matter of law.[6]

**DISPOSITION**

The November 18, 2024 order denying appellant's petition for resentencing is affirmed.

HILL, P. J.

WE CONCUR:

FRANSON, J.

HARRELL, J.

---

[6] Because of these conclusions, we need not resort to the great bodily injury enhancement or the premeditation finding to affirm the court's ruling.